UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:13-CR-344 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | ORDER AND OPINION |
| ANTONIO D. RAY, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the motion of defendant Antonio D. Ray ("defendant" or "Ray") to suppress evidence obtained from a traffic stop conducted on June 11, 2013. (Doc. No. 19.) The government filed a response in opposition. (Doc. No. 22.)[1] The Court held an evidentiary hearing on defendant's motion on October 29, 2013. For the reasons set forth at the hearing, and as more fully explained below, the Court DENIES defendant's motion to suppress.

I. FINDINGS OF FACT

Defendant was indicted on July 16, 2013, for possessing a firearm with a prior felony conviction in violation of 18 U.S.C. § 922(g)(1). (Doc. No. 1.) The indictment arose out of a traffic stop on June 11, 2013. Ray moved for suppression of all evidence confiscated by the Cleveland Police Department on that day. (Doc. No. 19.) He argues that the officers, who did not have a warrant, did not have probable cause to believe that he violated a traffic law. Accordingly, defendant argues that the stop was an illegal stop, and the evidence obtained from it must be

---

[1] The government filed an earlier response in opposition (Doc. No. 21) in error. All references to the government's response refer to Doc. No. 22.

suppressed. The government opposed the motion to suppress, arguing both that the officers did have probable cause to believe that Ray committed traffic violation and that, in any case, Ray fled from the officers, justifying the officers' pursuit, seizure, and search. (Doc. No. 22.) The Court held a hearing on the motion to suppress, and made the following findings of fact.

At or about 1:40 a.m. on June 11, 2013, defendant was driving northbound in a red Dodge Stratus on West 25th Street in Cleveland, Ohio. Two officers from the Cleveland Police Department, Brian Middaugh and Michael McNeeley, were traveling southbound on West 25th Street in a police cruiser. As they drove past the Stratus, the officers noticed that the car did not have an outside rearview mirror attached to either door. Considering the perceived lack of visible rearview mirrors, the late hour, and the high-crime character of the neighborhood, the officers decided to follow the Stratus. While the defendant continued northbound on West 25th Street, the officers made a U-turn on West 25th and began following the defendant.

The defendant turned left, or westbound, onto Sackett Avenue and proceeded down Sackett Avenue toward West 30th Street. At the intersection of Sackett Avenue and West 30th Street, defendant turned left, or southbound, onto West 30th Street. Though there is a stop sign at Sackett and West 30th, defendant failed to fully stop and improperly turned into the left-hand lane on West 30th Street. The officers activated the cruiser's lights and siren and pursued the defendant southbound on West 30th Street. The defendant pulled over on the left-hand side of the road in front of or near 3369 West 30th Street. The officers stopped the cruiser, and Officer Middaugh exited, identified himself as law enforcement, and ordered defendant to stop. Ray took one step toward Officer Middaugh, then turned and ran into a field adjacent to 3369 West 30th Street.

When defendant exited the vehicle, Officer Middaugh said that he could see the

handle of the gun sticking out of defendant's waistband and yelled "gun" repeatedly to alert Officer McNeeley that Ray had ready access to a firearm. Officer Middaugh testified that he saw defendant holding the gun to his waist as he ran away. Ray was apprehended in the field adjacent to 3369 West 30th Street, and a 9mm pistol was found on the ground nearby.

## II. LAW AND ANALYSIS

### A. Probable Cause

The Fourth Amendment protects "the right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. An automobile stop, indisputably a seizure, cannot be unreasonable under the circumstances and, indeed, is not unreasonable when a police officer has "probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996). Probable cause exists when there are "reasonable grounds for belief, supported by less than prima facie proof, but more than mere suspicion." *United States v. Padro*, 52 F.3d 120, 122–23 (6th Cir. 1995). It is based on "the totality of the circumstances" and is a "practical, non-technical conception that deals with the factual and practical considerations of everyday life." *United States v. Abboud*, 438 F.3d 554, 571 (6th Cir. 2006).

In this case, probable cause may have been triggered by two separate traffic violations: (1) a mirror violation under Ohio Rev. Code § 4513.23[2] and Cleveland Codified

---

[2] In relevant part, this section provides:
    (A) Every motor vehicle , motorcycle, and trackless trolley shall be equipped with a mirror so located as to reflect to the operator a view of the highway to the rear of such vehicle, motorcycle, or trackless trolley.
    . . .
    (B) Whoever violates this section is guilty of a minor misdemeanor.
Ohio Rev. Code § 4513.23.

Ordinance § 437.21;[3] and (2) a failure to stop under Ohio Rev. Code § 4511.43[4] and Cleveland Codified Ordinance § 431.19.[5] Defendant denies both violations, and the Court will address each in turn.

At the suppression hearing, both Officer Middaugh and Officer McNeeley testified that they became interested in Ray's car when they noticed that it lacked both side mirrors, and they were unable to discern a rearview mirror. Indeed, after noticing that the Stratus had no visible mirrors, the officers made a U-turn and followed Ray northbound on West 25th Street to investigate further. Ray argues that the officers did not have probable cause to initiate a traffic stop because the Stratus did have a rearview mirror, and the officers had no grounds for believing that the Stratus lacked one. The Court need not decide this issue because it finds that the officers had probable cause to believe that Ray violated a traffic law by running a stop sign.

Officer Middaugh and Officer McNeeley testified at the suppression hearing that defendant failed to stop at the stop sign at Sackett Avenue and West 30th Street, but instead approached the intersection by positioning the car almost in the center of the road and then

---

[3] "Every motor vehicle and motorcycle shall be equipped with a mirror so located as to reflect to the operator a view of the street to the rear of such vehicle or motorcycle. Operators of vehicles and motorcycles shall have a clear and unobstructed view to the front and to both sides of their vehicles or motorcycles and shall have a clear view to the rear of their vehicles or motorcycles by mirror." Cleveland Codified Ordinance § 437.21.

[4] In relevant part, this section provides:
>  (A) Except when directed to proceed by a law enforcement officer, every driver of a vehicle or trackless trolley approaching a stop sign shall stop at a clearly marked stop line, but if none, before entering the crosswalk on the near side of the intersection, or, if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering it.
>  . . .
>  (C) Except as otherwise provided in this division, whoever violates this section is guilty of a minor misdemeanor.

Ohio Rev. Code § 4511.43.

[5] "Except when directed to proceed by a law enforcement officer, every driver of a vehicle approaching a stop sign shall stop at a clearly marked stop line, but if none, before entering the crosswalk on the near side of the intersection, or, if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering it." Cleveland Codified Ordinance § 431.19.

turning left onto West 30th Street into the left-hand lane. At this point, after witnessing the failure to stop, the officers activated their lights and siren.

Defendant testified to a different version of these events at the suppression hearing. He claimed that the officers activated their lights on West 25th, after making a U-turn and proceeding northbound. Activation of the lights persisted as the officers proceeded westbound on Sackett. Defendant stated that he did not pull over on Sackett because he believed that the officers were responding to a call elsewhere. Ray testified that he made a full stop at the stop sign on Sackett Avenue and West 30th Street and turned left onto West 30th Street. Only on West 30th Street did Ray claim that the officers activated their siren, whereupon defendant realized that the officers were following him and pulled over on the left side of the road.

The Court does not find defendant's version of the events of June 11 credible. As stated in its findings of fact above, the Court credits the officers' version of the events. It finds that Ray did not make a full stop at the intersection of Sackett and West 30th and that Officers Middaugh and McNeeley only activated the cruiser's lights and siren after witnessing Ray's failure to stop. Based upon their observations, the officers had probable cause to believe that Ray had violated Ohio Rev. Code § 4511.43 and Cleveland Codified Ordinance § 431.19. The subsequent automobile stop was, therefore, reasonable under the circumstances and did not violate the Fourth Amendment.

Though the Court finds that Ray failed to stop at the stop sign, it also notes that he admitted at the suppression hearing that he immediately ran from the officers upon exiting the Stratus. The officers then had reasonable suspicion that Ray was involved in criminal activity. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("Headlong flight—whenever it occurs—is the consummate act of evasion: it is not necessarily indicative of wrongdoing, but it is certainly

5

suggestive of such."). Moreover, Officer Middaugh testified that he saw a gun sticking out of Ray's waistband when Ray exited the car. The officers were unquestionably justified in pursuing and investigating further. Upon pursuit, Officer Middaugh apprehended Ray and found the firearm nearby. Thus, the seizure, which took place after the failure to stop and the headlong flight, was justified under existing law.

B. Seizure

Quite apart from providing the officers with reasonable suspicion that he was involved in criminal activity, evading the police delayed Ray's seizure for purposes of the Fourth Amendment. According to Supreme Court precedent, "for one to be seized within the meaning of the Fourth Amendment, either physical force must be used or, where force is absent, submission to the assertion of authority." *United States v. Randolph*, 131 F. App'x 459, 461 (6th Cir. 2005) (citing *California v. Hodari D.*, 499 U.S. 621, 626 (1991)). Activating the lights and siren of a police car, while a show of authority, does not constitute a seizure if the suspect does not actually submit to the authority by pulling over. *Id.* at 462. Likewise, a suspect is not seized when "a policeman yell[s] 'Stop, in the name of the law!' at a fleeing form that continues to flee." *California v. Hodari D.*, 499 U.S. 621, 626 (1991). In *Hodari D.*, the suspect was not seized until he was tackled by police. By that point, he had abandoned the cocaine that was the subject of the motion to suppress. Accordingly, the abandoned cocaine was not a fruit of the subsequent seizure.

The facts here are quite similar to *Hodari D*. The lights, the siren, and the command to stop constituted an assertion of authority, but Ray did not submit to that authority. He did stop the car, but, by his own admission, immediately fled from the officers. Under *Hodari D.*, he was not seized until he tripped and was apprehended by Officer Middaugh. The gun,

6

which was found near the place of arrest, was apparently abandoned *before* Ray was seized. Thus, the gun was not a fruit of the automobile stop.

III. CONCLUSION

Defendant's motion to suppress fails. Officers Middaugh and McNeeley had probable cause to believe that Ray violated Ohio and local law. Moreover, Ray fled from the officers rather than yielding to their assertion of authority, arousing reasonable suspicion of criminal activity. He was finally apprehended without the firearm that is the subject of his motion to suppress, which was found nearby. The disputed seizure, though entirely legal, did not even result in the firearm that forms the basis of this charge. It had been abandoned. For all the above reasons, defendant's motion to suppress is DENIED.

**IT IS SO ORDERED**.

Dated: December 17, 2013

**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE**