UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:13-CR-344 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | ORDER AND OPINION |
| ANTONIO D. RAY, | ) | |
| | ) | |
| DEFENDANT. | ) | |

This matter comes before the Court on defendant's motion for a judgment of acquittal, or in the alternative, a new trial. (Doc. No. 57.) The government has filed a response in opposition. (Doc. No. 60.) For the reasons set forth below, defendant's motion is DENIED.

### I. Factual Background

On July 16, 2013, defendant Antonio Ray ("defendant" or "Ray") was charged with a single count of possessing a firearm with a prior felony conviction in violation of 18 U.S.C. § 922(g)(1). (Doc. No. 1.) The charge arose out of a June 11, 2013 traffic stop in Cleveland, Ohio. On that date, Cleveland Police Officers Brian Middaugh and Michael McNeeley observed Ray driving a car that lacked both exterior rearview mirrors. (Trial Tr., Doc. No. 53 at 426.) The officers pursued Ray's car, activating their cruiser's sirens. (*Id*. at 428.) Eventually, Ray pulled over, exited his car, and fled through a vacant lot adjacent to the street. (*Id*. at 428-29.)

Officer Middaugh, who gave chase, saw Ray holding a firearm in his waistband. (*Id*. at 428, 430.) Yelling "gun" to alert Officer McNeeley, Officer Middaugh pursued Ray through the vacant lot (*id.* at 430-31), as Officer McNeeley drove the cruiser eastbound to cut off Ray's path. (*Id*. at 461.) During pursuit, Ray lost his footing, fell, and was apprehended by Officer Middaugh, who did not find the firearm on Ray's person. (*Id.* at 431-32.) Officer Higinio Rivera, who had arrived in another patrol car to assist Officers Middaugh and McNeeley, located the firearm in the vacant lot. (*Id*. at 464-65.) Officer Middaugh identified the firearm, which lay ten feet from the point of Ray's fall, as the firearm he had seen in Ray's waistband. (*Id*. at 435-36, 466.) The firearm in question, a Jimenez Arms .9 mm pistol, had been assembled in Nevada and had subsequently traveled to Ohio. (*Id.* at 510.)

The jury found Ray guilty of the charge. (Doc. No. 46.) Ray timely moved for an extension of time to file post-trial motions and subsequently filed his motion for a judgment of acquittal, or in the alternative, a new trial. (Motion, Doc. No. 57.) In it, defendant argues that the evidence presented at trial was insufficient to support a conviction, necessitating a judgment of acquittal. (Motion at 649.) In the alternative, Ray argues that the interests of justice require a new trial because the guilty verdict was against the manifest weight of the evidence. (*Id*. at 642-43.) Defendant further argues that the Court committed error in admitting two government exhibits, both photographs of the lot in which Ray was apprehended, and in excluding defendant's photographs of the same scene. (*Id*. at 648-49.) The Court shall address both motions, beginning with the motion for new trial.

## II. Motion for New Trial

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). While the rule fails to

define the interest of justice, "it is widely agreed that Rule 33's 'interest of justice' standard allows the grant of a new trial where substantial legal error has occurred." *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010) (citing *United States v. Wall*, 389 F.3d 457, 474 (5th Cir. 2004)). A substantial error includes "any error of sufficient magnitude to require reversal on appeal." *Id*. (citation omitted). Alternatively, a defendant may obtain a new trial on the ground that "the [jury's] verdict was against the manifest weight of the evidence," *id.* (citation omitted), i.e., "'where the evidence preponderates heavily against the verdict.'" *United States v. Dimora*, 879 F. Supp. 2d 718, 724 (N.D. Ohio 2012) (quoting *United States v. Graham*, 125 F. App'x 624, 628 (6th Cir. 2005)).

When presented with a Rule 33 motion, the district court may weigh the evidence and assess the credibility of the witnesses; "[it] has often been said that [the trial judge] sits as the thirteenth juror." *United States v. Ruiz Solorio*, 337 F.3d 580, 589 n.6 (6th Cir. 2003) (citation omitted).[1] Whether to grant a Rule 33 motion is left to the sound discretion of the district court, *United States v. Wheaton*, 517 F.3d 350, 361 (6th Cir. 2008), and the defendant bears the burden of proving that a new trial is warranted. *United States v. Davis*, 15 F.3d 526, 531 (6th Cir. 1994).

A. <u>Ray's conviction was not against the manifest weight of the evidence.</u>

Ray first argues that his conviction is against the manifest weight of the evidence, which he alleges did not establish he had possession of the firearm. Under 18 U.S.C. § 922(g), the government must show that:

1. the defendant has been convicted in any court of a crime punishable by

---

[1] The judge does not assume the role of the thirteenth juror for purposes of determining whether a substantial legal error has occurred. *Munoz*, 605 F.3d at 373 (quotation omitted).

      imprisonment for a term exceeding one year;
2. following the conviction, the defendant knowingly possessed a firearm; and
3. the specified firearm crossed a state line prior to defendant's possession.

Ray admits that he has a prior felony conviction (*see* Tr. at 423), satisfying the first element, and that the firearm was made in California, assembled in Nevada, and traveled to Ohio (*see id.* at 510), satisfying the third element. (Motion at 643.) Ray argues, however, that the government's evidence at trial did not sufficiently establish the second element—possession. (*Id.* at 644.)

      Possession may be proven by direct or circumstantial evidence, and a jury may draw reasonable inferences to find the defendant guilty. *United States v. Arnold*, 486 F.3d 177, 181 (6th Cir. 2007) (en banc) (quoting *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973)). Indeed, the Sixth Circuit, among other circuits, has upheld felon-in-possession convictions based on these reasonable inferences, even when witnesses could not see or could not clearly see the defendant in possession of the firearm. *See id.* (collecting cases).

      Here, Officer Brian Middaugh testified repeatedly that he saw Ray in possession of a silver firearm, clutching it to himself as he ran away:

> A: [T]he man driving the red Stratus, after he abruptly stopped, opened the door, stepped out of the auto facing me, took one step towards me, and it appeared that he was holding a gun in his waistband – he was holding it with his right hand – and then fled[.]

(Tr. at 428-29.) Officer Middaugh further testified that he "saw a silver gun with a black handle[]" from a distance of one car length, "being held in [Ray's] waistband with the right hand." (*Id.* at 430.) To warn Officer McNeeley of the potential danger posed by Ray, Officer Middaugh repeatedly yelled "gun." (*Id.* at 430, 455.) When the firearm was recovered by Officer Rivera, Officer Middaugh testified that it matched the firearm he saw Ray clutching:

> Q: Is there any doubt in your mind that [the gun recovered by Officer Rivera] is

> the weapon that you saw on the defendant when he stood underneath the streetlight directly in front of you?
> A: No.

(*Id.* at 435.)

Direct examination and cross examination established that Officer Middaugh did not see Ray throw, drop, or abandon the gun at any point during his observation of Ray:

> Q: Okay. Now, you were focussed [sic] on his right hand because you allege that it was his right hand that you saw him holding something, right?
> A: Yes.
> Q: Something that you believed was a gun; is that correct?
> A: Something that was a gun.
> Q: And you indicated that you didn't see him throw anything, right, with his right hand, right?
> A: Correct.
> …
> Q: You didn't see him throw anything with his left hand either, correct?
> A: No.

(*Id.* at 450-51; 441-42.) One witness, Officer Rivera, contradicted Officer Middaugh's testimony on this point, claiming that Officer Middaugh told him he had seen Ray toss the firearm. (*Id.* at 469.) Either way, Officer Middaugh did not find the firearm on defendant. Rather, Officer Rivera located it nearby (*id.* at 465), which Officer Middaugh described as within ten feet from the point of Ray's apprehension. (*Id.* at 442.)

The government presented uncontradicted evidence that Officer Middaugh saw Ray holding a silver firearm, that Officer McNeeley heard Officer Middaugh shout "gun," and that Officer Rivera found the firearm within ten feet of the location in which Officer Middaugh apprehended Ray. The Court had the opportunity to observe Officers Middaugh, McNeeley, and Rivera testify at trial. The Court found the testimony of these witnesses credible, particularly the testimony of Officer Middaugh, who identified the firearm as the firearm he had seen in Ray's possession. The discrepancy between Officer Middaugh and Officer Rivera's testimony as to

5

whether Officer Middaugh saw Ray drop the firearm is not so serious as to preponderate against a finding of guilty. Indeed, it does nothing to contradict the essential facts establishing Ray's possession of the firearm—Officer Middaugh saw the firearm in Ray's waistband and later identified the firearm found nearby as the same firearm.[2] The Court reasonably can infer that Ray dropped or threw the firearm into the lot at or about the same time he fell and was apprehended by Officer Middaugh, who identified the thrown or dropped firearm as the firearm he say in Ray's waistband.

The evidence does not preponderate, let along strongly preponderate, against a finding that Ray possessed the firearm. Because Ray admits the other two elements of the offense, the guilty verdict is consistent with the weight of the evidence.[3]

B. <u>The Court did not commit substantial legal error in admitting some photographs while excluding others.</u>

Ray also argues that the Court committed error by admitting Government's Exhibits 4 and 5, both photographs of the lot and its surrounding environs, into evidence. He claims that the photographs were not properly authenticated, given that they were unaccompanied by testimony stating either the date of the photographs or that the photographs accurately reflected the lot on the evening in question. (Motion at 648.)

---

[2] Nor do the other purported factual discrepancies cut against the guilty finding. The government's witnesses testified to a varying amount of mud on the firearm. (*Compare* Tr. at 472 ("a little bit of mud") *with* Tr. at 478 ("covered with mud").) Additionally, two officers testified that the firearm was found near the porch, though they described the location in different terms. (*Compare* Tr. at 436 ("closer to the porch') *with* Tr. at 467 ("underneath the deck").) As stated above, these minor discrepancies do not contradict the essential facts establishing possession of the firearm.

[3] The lack of fingerprint or DNA analysis does not preponderate against the verdict. *See United States v. Martin*, 520 F.3d 656, 661 (6th Cir. 2008) (affirming conviction of possession of firearm despite lack of fingerprint evidence to demonstrate ownership). Nothing about the cases cited by defendant indicates that the government must produce fingerprint or DNA evidence to support a § 922(g) conviction. *See, e.g.*, *United States v. Wright*, 332 F. App'x 257, 260 (6th Cir. 2009) (noting that "abundant circumstantial evidence[,]" which, among other evidence, included fingerprints, established possession of the firearm); *United States v. Holycross*, 333 F. App'x 81, 84 (6th Cir. 2009) (DNA evidence among the "[a]mple evidence" that supported conviction). In the absence of fingerprint testing, the

Government's Exhibit 5 was authenticated by Officer Rivera:

> Q. All right. Officer Rivera, do you recognize what's in this picture?
> A. Yes, sir.
> Q. What is it?
> A. That's the field and the building that Officer Middaugh chased the suspect through.
> Q. All right. And did you find the gun in that yard?
> A. Yes, I did.

(Tr. at 471.) Government's Exhibit 5 was also authenticated by Officer Middaugh:

> Q. And showing you what's been marked as Government's Exhibit 5, do you recognize this item?
> A. Yes.
> Q. What do you recognize that to be?
> A. This is the yard that the defendant fled through.

(*Id.* at 434.) In short, both officers identified the photograph as the yard in which Ray was apprehended and the gun was recovered.

Government's Exhibit 4 was shown to Officer Middaugh:

> Q. If you wouldn't mind taking a look at the monitor, showing you what's been marked as Government Exhibit 4, do you recognize that?
> A. Yes.
> Q. What is it?
> A. That is the building that he stopped in front of with the numbers clearly affixed on the building, 3369.
> Q. Do you see the streetlight under which the car parked that evening?
> A. Yes.

(*Id.* at 429.) Officer Middaugh then identified in the photograph the path of Ray's flight from the officers. (*Id.* at 431.) Government's Exhibit 4 was also shown to Officer McNeeley:

> Q. Officer McNeeley, I'm showing you Government's Exhibit 4. Do you notice that streetlight in this picture?
> A. Yes.
> Q. Was that streetlight on, on the night you arrested the defendant?
> A. Yes.
> Q. All right. And how bright was that streetlight?

---

guilty verdict comported with the competent, credible testimony of the witnesses.

    A. As bright as a streetlight.

(*Id.* at 456.) After defense counsel explicitly stated that he "had no objection to any of [the exhibits,]" the Court admitted them into evidence. (*Id.* at 514.)

    To authenticate evidence under Fed. R. Evid. 901(b)(1), a witness must produce evidence sufficient to support a finding that the item is what the proponent claims it is, which may be established through the testimony of a witness with knowledge. The exhibits in question were presented as photographic depictions of the lot in which Ray was apprehended and the building and streetlight abutting the vacant lot. Two witnesses with personal knowledge testified that each photograph depicted the lot, building, and streetlight where the relevant events occurred. No more was required. *See United States v. Lemonde*, 188 F.3d 509, at *2 (6th Cir. 1999) (table decision).[4]

    Finally, Ray contends that the Court committed substantial error in excluding the photographs taken by the Federal Public Defender's investigator, Herminio Ramos. He claims that "the Court erroneously excluded Ray's photographs under Fed. R. Evid. 403, preventing Ray from presenting a defense, and warranting a new trial." (Motion at 649.)

    At trial, defense counsel asked Ramos to describe "the state of that lot" when Ramos took the photographs in question, in fall 2013, months after the incident. (Tr. at 524, 525.) Upon objection by the government, the Court conferred with counsel at sidebar. Defense counsel represented that Ramos' testimony and photographs "would indicate that when he went [to the lot], there was still debris there, still trash. It's just showing exactly – not exactly, but that

---

[4] Moreover, defendant expressly consented to the admission of the photographs and cannot now charge the Court with error over such admission. *See United States v. Brown,* 179 F. App'x 346, 348 (6th Cir. 2006) (citing *United States v. Sloman*, 909 F.2d 176, 182 (6th Cir. 1990)); *see also United States v. Cunningham*, 405 F.3d 497, 502 (7th Cir. 2005) (when defense counsel affirmatively withdrew objection to admission of pictures as evidence, defendant waived argument that pictures were inadmissible).

the area is still in that general same state." (Tr. at 525.) The government indicated that the photographs, depicting the vacant lot strewn with leaves and other debris, "ha[d] no bearing on how [the lot] looked on the night of the incident[,]" which occurred months before the photographs were taken. (*Id*.) Upon examining the photographs, the Court observed:

> THE COURT: I mean, I'm looking at your photos now. And we don't know if -- we don't know if this depicts how it looked on the day of the incident.
> I can point to what appear to be leaves that would have, for instance, leaves that would have fallen later because of the fall.
> And so that could be very confusing and misleading as to particularly this photo I'm looking at. We have a significant number of leaves on the ground which nobody testified as to that type of condition.

(Tr. at 526.) Defense counsel noted that one witness testified that the lot contained some debris; however, he admitted that no witness testified to any leaves, let alone the large amount of leaves depicted in the investigator's photographs. (Tr. at 527.)[5] Given that the investigator's photographs contained leaves and debris, while the government's photographs had no leaves and minimal debris, the Court concluded, "we have no way of knowing if these pictures are even remotely representative of what the scene looked like[.]" (Tr. at 529.) The Court excluded the photographs under Fed. R. Evid. 403, explaining:

> So I do find that because of that, these are not going to assist the jury. If there is some other reason you want to show them other than the condition of the ground, perhaps I can permit you to do that. But I think it would be very misleading because of the other reasons I've stated previously.

(Tr. at 529-30.) Following the Court's invitation to identify another purpose for showing the photographs, defense counsel did not identify any other reason. (*See* Tr. at 530-31.) He did not

---

[5] As pointed out by the Court and the government, defense counsel did not show Ramos' photographs to any witness with personal knowledge of lot's appearance on the date of the incident. (Tr. at 527, 528.)

9

ask Ramos any questions after the sidebar concluded.. (*See* Tr. at 531.)

Ray does not point to any specific error in this ruling, but states only that excluding the photographs prevented him from presenting a defense. The Court sees no reason to revisit its ruling, and, for the reasons set forth at trial, concludes that the photographs were properly excluded under Rule 403. Defendant has not shown that a new trial is warranted.

### III. Judgment of Acquittal

Pursuant to Federal Rule of Criminal Procedure 29(a) and (c), the Court must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. The Court must determine whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *United States v. Mackey*, 265 F.3d 457, 460 (6th Cir. 2001) (citations omitted). In deciding a Rule 29 motion, the Court draws all inferences from the evidence in favor of the prosecution. *United States v. Sherlin*, 67 F.3d 1208, 1214 (6th Cir. 1995). Unlike a motion for new trial, a court does not weigh the evidence, consider the credibility of the witnesses, or substitute its judgment for that of the jury. *See United States v. Walls*, 293 F.3d 959, 967 (6th Cir. 2002). "'Substantial and competent circumstantial evidence by itself may support a verdict and need not remove every reasonable hypothesis except that of guilt.'" *Dimora*, 879 F. Supp. 2d at 724 (quoting *United States v. Fisher*, 648 F.3d 442, 450 (6th Cir. 2011)). The question the court must ask is whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Evans*, 883 F.2d 496, 501 (6th Cir. 1989) (citation omitted).

Though the jurors were not required to believe the testimony of Officer Middaugh that he observed Ray holding a firearm, they evidently did believe it. *See United States v.*

*Daniels*, 170 F. App'x 409, 413 (6th Cir. 2006) ("[I]t was the proper role of the jury to determine the believability of [the] testimony."). Nor were the jurors required to draw the inference that the firearm Officer Middaugh observed in Ray's waistband was the firearm found nearby by Officer Rivera. As ably pointed out by defense counsel during closing statements, the jury could have instead inferred that the firearm had long been abandoned in the lot. (*See, e.g.*, Tr. at 594-95.) The jury evidently inferred, however, that though Officer Middaugh did not see Ray throw, toss, or drop the firearm, the firearm recovered nearby was the firearm he had seen Ray holding. Both the credibility determinations and inferences drawn by the jury were reasonable. Defendant stipulated to two of the three elements of the offense, and a rational trier of fact could have inferred, based on uncontradicted testimony, that the third element—possession—had been proven as well. Accordingly, there is no basis on which to enter a judgment of acquittal.

### IV. Conclusion

For the reasons set forth above, defendant's motion for a judgment of acquittal, or in the alternative, a new trial is DENIED.

**IT IS SO ORDERED**.

Dated: May 8, 2014

　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　**HONORABLE SARA LIOI**
　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**